### APPEAL OF HUGH WALLACE CO.

Docket No. 1274.    Submitted February 12, 1925.    Decided October 28, 1925.

1. Depreciation claimed by taxpayer allowed.

2. Amounts credited to profit and loss on taxpayer's books, which represent its undistributed proportion as a stockholder in the profits of other corporations, should be excluded in computing invested capital.

3. The deduction of certain items as expenses disallowed for want of proof.

4. The amount by which capital has been impaired by the payment of dividends to be computed for the purpose of determining invested capital.

*Floyd G. Arms* for the taxpayer
*Benjamin H. Saunders, Esq.,* for the Commissioner.

Before Ivins,[1] Korner, and Marquette.

This is an appeal from the determination of a deficiency in income and profits taxes for the year 1918 in the amount of $9,807.56.

### FINDINGS OF FACT.

The taxpayer is a Michigan corporation engaged in the manufacture of robes, with its principal office at Detroit, and it appeals from the determination of the Commissioner as set forth in a deficiency letter mailed November 4, 1924.

In the year 1905 the taxpayer made and entered into a contract with the Berlin Robe Co., a Canadian corporation, hereinafter called the Robe Company, whereby it agreed to manage and operate that company, and as compensation therefor was to receive 4 per cent of the net profits. Under the contract the taxpayer had the right to and did purchase one-third of the capital stock of the Robe Company, which it retained until 1917, when it sold its stock and ceased the management and direction of the Robe Company. During the period of its operations, at the end of each fiscal period, it received the percentage of the profits under the contract for its services in the management of the Robe Company, and also set up on its books each year as a credit to profit and loss one-third of the net earnings of the Robe Company, after deduction of the 4 per cent operating compensation, as its share of the net profits by reason of its ownership of the one-third of the capital stock of the Robe Company. No dividends were declared or paid by the Robe Company, and the net profits remained in the business of that company.

In the year 1910 the taxpayer purchased a robe factory and caused it to be incorporated under the name of the American Buffalo Robe Co., hereinafter called the Buffalo Company, and owned the entire capital stock of that company. The profits made by the Buffalo Company were carried into the profit and loss account of the taxpayer for each fiscal period until 1914, when the taxpayer sold all its stock in the Buffalo Company. No dividends were ever declared or paid by the Buffalo Company and the net profits remained in the business of the company.

---

[1] This decision was prepared during Mr. Ivins's term of office.

During the period January 1, 1913, to December 31, 1917, the taxpayer paid dividends in the amount of $62,000 on its common and preferred stock. The examining revenue agent, in his audit, recomputed depreciation from 1905 and accumulated $39,269.47 thereof to January 1, 1918. The profits of the Robe Company and the Buffalo Company were excluded from surplus and with the additional depreciation and the dividends paid during the period January 1, 1913, to December 31, 1917, an impairment of capital was disclosed. Upon review the Commissioner reversed the action of the revenue agent with respect to the accumulated depreciation and reduced the deficit. In the deficiency letter it appears that the accumulated depreciation was restored as of January 1, 1918, and was first applied against an operating deficit of $29,614.50. The excess of the accumulated depreciation over the operating deficit was then applied to reduce the impairment of capital in the amount of $62,000, occasioned by the payment of the dividends hereinbefore referred to, leaving, according to the deficiency letter, a deficit of $52,345.13 on January 1, 1918. The taxpayer's original invested capital was accordingly reduced by the amount of the alleged impairment of capital. The Commissioner also increased the taxpayer's income for the year 1918 by the amount of $5,095.53, in order to bring depreciation claimed by the taxpayer on its original return in harmony with its books, and also added to the taxpayer's income the amount of $1,594.33 on account of expense items applicable to the year 1917, and $629.16 on account of a paving improvement tax paid in 1918 and charged to expense.

Upon the basis of the adjustments made by the Commissioner as herein set forth, additional tax was determined to be due for the year 1918 in the amount of $9,807.56. At the hearing, however, the Commissioner conceded that the taxpayer is entitled to depreciation for the year 1918 in the amount of $8,800 and is also entitled to an adjustment of invested capital for the year 1918 on account of the accumulated depreciation hereinbefore referred to and that the deficiency involved herein should be reduced to $3,984.95.

DECISION.

The amount of the deficiency to be assessed should be computed in accordance with the following opinion and will be settled on consent or on 10 days' notice, under Rule 50.

OPINION.

MARQUETTE: It appears from the evidence in this appeal that when the Commissioner reversed the action of the examining revenue agent in accumulating depreciation, and thereby increased the de-

preciation reserve and reduced surplus, he restored the amount of such accumulated depreciation as of January 1, 1918, and first applied it against an alleged operating deficit. The excess of the accumulated depreciation over the alleged operating deficit was then applied to reduce an impairment of capital caused by the payment of dividends in the amount of $62,000 during the period January 1, 1913, to December 31, 1917, leaving, according to the deficiency letter, an impairment of capital in the amount of $52,-345.13 on January 1, 1918. That there was on January 1, 1918, an impairment of capital is established by the evidence in this appeal, as hereinafter set forth, but it is not clear that the amount was as set forth in the deficiency letter. In fact, the Commissioner so conceded at the hearing. The adjustment on account of the accumulated depreciation should be made over the period of January 1, 1913, to December 31, 1917, taking into consideration the dividends paid and the earnings or operating losses for that period as the case may be, in order to determine the true amount by which the capital was impaired as of January 1, 1918.

The Commissioner conceded at the hearing that the taxpayer is entitled to a deduction for depreciation in the amount of $8,800 for the year 1918. This leaves for consideration only the question as to the exclusion from the taxpayer's invested capital for the year 1918 of the amounts set up on its books as credits to profit and loss on account of the earnings of the Robe Company and the Buffalo Company, the items of alleged expense disallowed by the Commissioner and added to its income for the year 1918, and whether or not the payment of dividends during the period January 1, 1913, to December 31, 1917, constituted an impairment of capital.

We are satisfied from the evidence that the Commissioner's action in excluding from the taxpayer's invested capital the amounts carried on its books as profits of the Robe Company and the Buffalo Company was correct and should be approved. These profits were represented on the taxpayer's books by mere bookkeeping entries and the taxpayer never at any time received the money they were alleged to represent. Neither the Robe Company nor the Buffealo Company ever paid dividends during the time the taxpayer owned stock therein. Therefore, the entries did not represent actual assets belonging to the taxpayer. They represented nothing, in fact, and were properly excluded by the Commissioner from the taxpayer's capital.

With reference to the items of alleged expense for the year 1919 which the Commissioner has disallowed, the taxpayer has introduced no evidence to support its claim that they were proper deductions

from income, and therefore the Commissioner's action with respect thereto is approved.

The record in this appeal discloses, relative to the impairment of capital, that on January 1, 1913, the taxpayer's books of account showed apparent undivided profits and surplus of $66,126.65. These undivided profits and surplus, however, included $55,318.07, representing the amounts carried by the taxpayer on its books as profits accruing to it on account of its ownership of stock in the Robe Company and the Buffalo Company. Excluding that amount from the apparent book surplus and undivided profits, there would be left, as of January 1, 1913, undivided profits and surplus in the amount of $10,808.58. In February, 1913, the taxpayer paid dividends of $34,000. The payment of these dividends, therefore, constituted an impairment of capital in the amount of $23,191.42. So far as the record discloses, this deficit in capital was not subsequently wiped out. In February, 1916, dividends were paid in the amount of $14,000, and in November, 1917, dividends were again paid in the amount of $14,000. It is clear, therefore, that capital was impaired by the payment of these dividends. However, the exact amount by which capital was impaired on January 1, 1913, and by which amount the taxpayer's original invested capital must be reduced as of that date, can not be accurately determined from the evidence before the Board. It should, however, be adjusted as hereinbefore set forth.